Baker vs. The State.

---

BAKER, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 8 — May 25, 1894.*

CRIMINAL LAW AND PRACTICE. (1) *Extradition: Abduction.* (2) *Plea in abatement: Withdrawal of plea to merits.* (3, 4) *Change of venue: Prejudice of judge.* (5) *Objections to counsel for state: Waiver.* (6) *Jurors: Bias.* (7–9) *Larceny: Amending information: Plea: Election between counts.* (10) *Keeping jury together.* (11) *Remarks by judge: Exceptions.* (12) Habeas corpus: *Deductions from term of imprisonment.*

1. The fact that the defendant in a criminal case was brought into the state forcibly and without extradition papers does not deprive the trial court of jurisdiction.

Baker vs. The State.

2. After having pleaded to the merits and been once tried and convicted, the defendant was allowed to file a plea in abatement, which, however, was overruled and he was again tried on the merits and convicted. *Held,* that he could not raise the objection for the first time in the appellate court that his plea to the merits was withdrawn by the filing of the plea in abatement and that he had never afterwards pleaded to the merits.

3. After having obtained a change of venue on the ground of prejudice of the judge, the defendant cannot upon a new trial have another change on the same ground. R. S. sec. 4680.

4. The fact that after the first trial the judge wrote to the attorney general expressing anxiety as to the correctness of the bill of exceptions and suggesting the aid of certain counsel, did not disqualify him from presiding at the second trial.

5. Objections to the assistant counsel on the part of the state were waived by the defendant when, having been called upon in open court to make any such objection, he failed to do so.

6. A juror stated, on his examination, that from what he had read in the newspapers and heard said about the case he had formed an opinion which it would take evidence to remove; that he was afraid he could not give the testimony the same weight and decide the case the same as though he had no opinion; that he had no prejudice for or against the accused; that he thought he could and would lay aside what he had heard and read, and try the case according to the evidence given in court, and upon that alone; that the opinion he had formed would have no weight as against the testimony which should be submitted in court; and that he felt confident that nothing he had heard or read would bias him in returning a just verdict the same as though he had never heard about the case. There being no other evidence, this court holds that it cannot say, as a matter of fact, that the finding of the trial court to the effect that the juror was indifferent as between the parties was contrary to the evidence, nor, as a matter of law, that the court abused its discretion in permitting him to serve as a juror.

7. Under sec. 4703, R. S., the trial court properly allowed an information for larceny to be amended so as to conform to the proof as to the ownership and amount of the money stolen, the difference in amount being insignificant as bearing on the grade of the offense.

8. The plea of not guilty entered prior to such amendment stood as the plea to the amended information.

9. Where an information for larceny contained two counts which were the same except as to the ownership of the money stolen, it was a matter within the discretion of the trial court whether the prosecution should be required to elect between them.

10. Upon a trial for larceny a direction that the jury be kept together, and a modification thereof allowing the jurors to attend their places of business with the permission of the court, were within the discretion of the court.

11. Upon a trial for larceny, money taken from the defendant when he was arrested was admitted in evidence. Defendant's counsel having moved to strike it out because it did not appear that it was part of the money stolen, the trial court said "I think the evidence introduced upon the part of the state shows to us that it is a portion of the money taken at that time; consequently the motion is denied." A general exception by defendant is construed as applicable only to such denial of the motion, and not to the fact that the court expressed an opinion upon that branch of the evidence; and the remark itself is *held* to have been manifestly intended merely as a statement that the evidence tended to prove that it was a part of the money taken.

12. Where, upon a second trial, the defendant is a second time convicted and sentenced, and is confined by virtue of the judgment, this court cannot, on a writ of *habeas corpus*, inquire into, and deduct from the second sentence, time served under the first or any diminution to which he may be entitled on account of good behavior, under ch. 238, Laws of 1880.

ERROR to the Circuit Court for *Ashland* County.

On or about September 20, 1889, the Iron Exchange Bank of Hurley held, as a special deposit, about $40,000, which was on that day stolen therefrom. Upon complaint made to the judge of the municipal court of Ashland, November 26, 1889, to the effect that the plaintiff in error, *E. W. Baker*, had committed said offense, a warrant was issued and said *Baker* was arrested. Upon an examination had before said judge, he was, on December 4, 1889, held for trial in said municipal court. On February 10, 1890, an information was filed against the said *E. W. Baker* and one Phelps Perrin, the second count of which was in the words and figures following, to wit:

"Second count: And I, George P. Rossman, district attorney as aforesaid, do hereby further inform the court that on the 20th day of September, A. D. 1889, at the

town of Vaughn, in said Ashland county, Phelps Perrin and *E. W. Baker* did feloniously steal, take, and carry away thirty-nine thousand one hundred and sixty dollars ($39,160), lawful money of the value of thirty-nine thousand one hundred and sixty dollars ($39,160), the money of the Ashland Iron Mining Company, a corporation organized and existing under and by virtue of the laws of Michigan, then and there being found, against the peace and dignity of the state of Wisconsin.

        "GEORGE P. ROSSMAN, District Attorney.
  "Dated Feb. 10, A. D. 1890."

Said *Baker* thereupon put in a plea in abatement, which was overruled by the said municipal court, and thereupon the said *Baker* pleaded not guilty, and thereupon and in February, 1890, the said *Baker* filed an application for a change of the venue upon an affidavit of prejudice of the judge, and thereupon an order was entered changing the place of trial of said action to the circuit court for Ashland county. Subsequently the said *Baker* was separately tried in the circuit court for Ashland county, and at the close of such trial, June 25, 1890, the jury returned a verdict to the effect that the said *Baker* was guilty of the offense as charged in the said second count of the information made and filed therein. Judgment being entered thereon and the said *Baker* sent to the state prison, the case was brought to this court on writ of error, and November 17, 1891, the same was reversed and the cause remanded for a new trial. 80 Wis. 416.

Pursuant to the mandate of this court, and on or about February 1, 1892, the said circuit court ordered said *Baker* from the state prison to Ashland county for trial at the February term of said court for 1892. Thereupon the said *Baker* put in a new plea in abatement on seven different grounds mentioned, the sixth of which was to the effect that, at the time of his arrest, he was a resident of Iron-

wood, Mich., and was brought to Wisconsin without extra-dition papers and without due process of law, but forcibly and under duress. The state demurred to all of said pleas except the sixth, and traversed that. The court sustained such demurrer, and, the defendant having failed to prove that he was thus brought forcibly from Michigan, that por-tion of the plea was overruled. *Baker* thereupon filed a petition to remove said cause to the circuit court of the United States for the western district of Wisconsin, and the state answered said petition for removal, and the court denied such application. *Baker* then asked to amend his original plea in abatement, but the same was denied by the court.

On March 3, 1892, the said second count of said informa-tion was amended by the district attorney so as to read, after the entitling of the same, as follows, to wit:

" I, Richard Sleight, district attorney of Ashland county, hereby inform the court that on the 20th day of September, A. D. 1889, at the town of Vaughn in said county, Phelps Hill, alias Phelps Perrin, and *Edward W. Baker* did forty thousand six hundred and eighty dollars ($40,680), lawful money of the United States, of the value of forty thousand six hundred and eighty dollars ($40,680), twenty-six thou-sand seven hundred dollars ($26,700) of which said money was the money and property of the Ashland Iron Mining Company, a corporation organized and existing under and by virtue of the laws of Michigan, and thirteen thousand nine hundred and eighty dollars ($13,980) of which said money was the money and property of the Germania Iron Mining Company, a corporation organized and existing under and by virtue of the laws of Wisconsin, all of which said money was then and there found, feloniously steal, take, and carry away, against the peace and dignity of the state of Wisconsin.    RICHARD SLEIGHT, District Attorney.

" Dated March 3, A. D. 1892."

Thereupon the trial of the said cause upon the merits proceeded, and at the close thereof, March 10, 1892, the jury returned a verdict which, omitting the title of the cause, is as follows, to wit: "We, the jury impaneled and sworn to try the issues in the above-entitled action, do find the above-named defendant, *Edward W. Baker*, jointly im-· pleaded against with Phelps Hill, alias Phelps Perrin, guilty of the offense as charged in the amended information herein." On March 11, 1892, the defendant moved the court to set aside said verdict and grant a new trial, but the same was denied. Thereupon the court entered judgment against said *Baker* in the words and figures (omitting the title) following, to wit: "Sentence by the court: It is hereby adjudged that you, *Edward W. Baker*, be sentenced to be confined at hard labor in the state prison at Waupun by the warden thereof for the period of five years, the first day of your imprisonment therein and the 20th day of September of each year thereafter during your term of sentence to be solitary confinement. The term of your sentence shall begin at noon to-day. Let the sheriff of Ashland county put this sentence into execution.          [Signature, etc.]

"Dated this 11th day of March, A. D. 1892."

To reverse that judgment the said *Baker* has sued out this writ of error.

*Rublee A. Cole*, for the plaintiff in error, contended, *inter alia*, that the court erred in permitting the juror Wentworth to sit as a juror. *Trial of Aaron Burr*, 4 Causes Celebres, 415, 464; *Coughlin v. People*, 144 Ill. 140; *Reynolds v. U. S.* 98 U. S. 145; *Schoeffler v. State*, 3 Wis. 823; *Stephens v. People*, 38 Mich. 743; *People v. Barker*, 60 id. 277; *Washington v. Comm.* 13 Va. L. J. 861; *Thurman v. State*, 27 Neb. 628; *Miller v. State*, 29 id. 437; *Marion v. State*, 20 id. 233; *Fouts v. State*, 7 Ohio St. 472; *Erwin v. State*, 29 id. 186; *Frazier v. State*, 23 id. 551; *McHugh v. State*, 38 id. 155; *Freeman v. People*, 47 Am. Dec. 216;

Baker vs. The State.

*Smith v. Eames*, 36 id. 515; *People v. Mather*, 21 id. 122; *Rothschild v. State*, 7 Tex. App. 519; *People v. Bodine*, 1 Denio, 304; *State v. Brooks*, 92 Mo. 542; *People v. McQuade*, 110 N. Y. 284. The amendments allowed to the information inserted a new offense, and made it state two distinct offenses in one count. *In re Allison*, 13 Colo. 525; *Ben v. State*, 58 Am. Dec. 234. The court should not have proceeded with the amended information without requiring a new plea. *People v. Corbett*, 28 Cal. 329; *People v. Gaines*, 52 id. 479; *People v. Lightner*, 49 id. 226; *People v. Bowman*, 81 id. 566, 569; *State v. Saunders*, 53 Mo. 234; *State v. Montgomery*, 63 id. 296; *Douglass v. State*, 3 Wis. 820.

For the defendant in error there was a brief by the *Attorney General* and *J. M. Clancey*, Assistant Attorney General, and oral argument by the *Attorney General*. To the point that the objections to the juror Wentworth were properly overruled, they cited *Schoeffler v. State*, 3 Wis. 823; *Staup v. Comm.* 74 Pa. St. 458; *State v. Collins*, 70 N. C. 241; *Epes v. Comm.* 5 Grat. 676; *Little v. Comm.* 25 id. 921; *Comm. v. Webster*, 5 Cush. 295; *Sanchez v. People*, 4 Parker, Crim. Rep. 535; *Monroe v. State*, 23 Tex. 210; *People v. King*, 27 Cal. 507; *State v. Lawrence*, 38 Iowa, 51; *State v. Potter*, 18 Conn. 166.

CASSODAY, J. As indicated in the foregoing statement, *Baker* and Perrin were together charged with the larceny. They pleaded separately, and each secured a separate trial, but were both convicted nearly four years ago. Such judgment against Perrin was affirmed by this court, November 17, 1891. *Perrin v. State*, 81 Wis. 135. On the same day the judgment against *Baker* was reversed for the reasons given in the opinion by Mr. Justice WINSLOW in the case. *Baker v. State*, 80 Wis. 416. *Baker* was again tried and convicted a little over two years ago, and the

judgment entered therein is now here for review on this writ of error.

1. It is alleged in the plea in abatement put in just before the last trial, in effect, that the trial court was without jurisdiction because *Baker* was brought into Ashland county from Michigan forcibly and without extradition papers. Assuming such to be the facts, still that would not have deprived the trial court of jurisdiction. *Ker v. People,* 110 Ill. 627, affirmed, *Ker v. Illinois,* 119 U. S. 436; *Mahon v. Justice,* 127 U. S. 700. In each of these cases the prisoner was kidnaped and then brought within the jurisdiction of the trial court. To the same effect: *Lascelles v. Georgia,* 148 U. S. 537; *State ex rel. Brown v. Stewart,* 60 Wis. 587. But in the case at bar such portion of the plea in abatement was denied and put in issue by the state; and, since *Baker* failed to offer any evidence that he was so forcibly brought into Ashland county and the state, it must be assumed that he voluntarily came within the jurisdiction of the trial court. So, upon the record before us, the question presented is really not in the case.

2. To the balance of the plea in abatement the state demurred, and the trial court appears to have properly sustained the demurrer. But the contention is that the allowance by the court of such plea in abatement to be filed just before the last trial operated as a withdrawal of the plea of not guilty entered prior to the first trial. In support of such contention, counsel cite the statute requiring a plea in abatement to be filed "before pleading to the merits" (sec. 4654, S. & B. Ann. Stats.), and also cites *Martin v. State,* 79 Wis. 165; *Baker v. State,* 80 Wis. 416; *Ryan v. State,* 83 Wis. 486. But none of these cases support any such contention. The original plea in abatement, filed before pleading to the merits, was held bad on its face when the case was here before. However irregular it may

Baker vs. The State.

have been for the trial court to allow *Baker* to file a new plea in abatement after having pleaded to the merits, and just before the last trial, yet it was granted at his request and as a favor to him, and he is in no position to take advantage of such irregularity. While a right to plead in abatement may be waived by pleading to the merits, yet it does not follow that a plea to the merits is to be deemed waived or withdrawn by subsequently filing a plea in abatement. Dilatory pleas are not favored in the law, whereas pleas in bar and to the merits are favored. *Hooker v. Greene,* 50 Wis. 276, 277. Certainly no such question can be raised for the first time in this court.

3. Error is assigned because the trial court, just before the last trial, refused to change the venue on the ground of the prejudice of the trial judge, as required by sec. 4680, R. S. But, as appears in the foregoing statement, *Baker* had two years before obtained one change of venue upon the same ground, and the section of the statute last cited expressly provides that "not more than one change of venue shall be awarded in any cause." So sec. 4679, R. S., provides that "the party accused shall be entitled to a change of venue but once and no more." These provisions were both considered in *Martin v. State,* 35 Wis. 294, and it was there expressly held that, " when the defendant in a criminal prosecution has obtained a change of venue for the cause mentioned in either of those sections, he cannot have another change either for the same cause or for that mentioned in the other section." Thus it appears that the trial court had no statutory authority to award such change of venue, and certainly he had no such authority independent of and contrary to the statute. It may have been embarrassing for the judge to preside on the trial after the filing of the affidavit of his prejudice; but he appears to have acted conscientiously and fairly, according to his sense of duty, and we perceive nothing censurable in his

conduct. The mere fact that he wrote a letter to the attorney general exhibiting some anxiety as to the correctness of the former bill of exceptions, and suggested the propriety of his being aided by counsel who represented the state upon the former trial, did not disqualify him from presiding.

4. On December 29, 1891, the trial court, in pursuance of a stipulation between the attorneys representing the state and the defendant, *Baker*, respectively, made an order to the effect that G. W. Cate and R. A. Cole be appointed as attorneys for *Baker*, and be paid at public expense, and that such appointment should begin as of January 23, 1891, and that such stipulation should be enforced by the court, as far as lawful and right so to do. On February 15, 1892, the defendant having claimed that he had been coerced into waiving his right to object to counsel who had appeared in behalf of the state, the court made two orders, to the effect that all orders based on such stipulations be and the same were thereby vacated and set aside; and *the court thereupon called upon the defendant and his said counsel in open court to raise any objections to counsel on the part of the state;* and the said counsel for *Baker* and each of them *having failed to make any such objection*, it was ordered that said Rossman, who had previously been appointed as counsel to assist the district attorney, be continued in that capacity for the then present trial of this case in that court only; and, the defendant having requested that W. W. O'Keefe and R. A. Cole be continued as counsel to defend him at public expense, it was thereby ordered that they be permitted to serve in that capacity, and continue in the defense of the action at the expense of the county, but for that trial and in that court only. Such being the record, it is very manifest that there is no reversible error in the making of such orders.

5. Error is assigned because the court allowed a man by

the name of Wentworth to become a juryman. He was sworn and examined as to his qualifications to act as such juryman, and testified to the effect that he had never heard any testimony in the case; that he had no personal knowledge of the facts upon which the case depended; that he never saw *Baker* before; that from what he had read in the newspapers and heard said about the case he had formed an opinion which it would take evidence to remove; that he was afraid he could not give the testimony the same weight and decide the case the same as though he had no opinion; that he had no prejudice for or against the accused; that he thought he could and would lay aside what he had heard and read, and try the case according to the evidence given in court, and upon that alone; that he understood the burden of proof was upon the state; that he felt satisfied that he could try the defendant upon the evidence alone, and would be obliged to do so; that he would determine the guilt or innocence of the accused upon the testimony, and that alone; that he would set aside the opinion he had formed as against the testimony; that such opinion would have no weight as against the testimony which should be submitted in court; that nothing he had read or heard would bias him in returning a just verdict, the same as though he had never heard about the cause,— of that he felt confident.

The facts bring the case very near, if not upon, the border line. In all such cases the safer practice is for the trial court to excuse the person from sitting upon the jury whenever there is any reasonable doubt as to his impartiality. The question recurs whether it was error to allow Mr. Wentworth to become a juryman. It must be conceded that in all criminal prosecutions the accused enjoys the right " to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed." Sec. 7, art. I, Const. Wis.; *State ex rel. Lar-*

Baker vs. The State.

*kin v. Ryan,* 70 Wis. 681. Upon the facts stated, can we
say, as a matter of law, that Wentworth was not an im-
partial juror within the meaning of this constitutional
guarantee? Counsel for the accused seems to rely very
much upon the decision in *Coughlin v. People,* 144 Ill. 140.
In that case, as we understand it, there was less reason for
holding the two jurymen to be impartial, than in the case
at bar, but, notwithstanding that fact, two of the justices
dissented. The question is there learnedly discussed in
both the majority and minority opinions. As indicated,
we agree with that court to the extent of holding that the
juryman must be impartial, but we are unwilling to hold
that "he should be wholly free, even from the *suspicion* of
bias," in order to be qualified to sit. Certainly the qualifi-
cation of a person to sit as a juryman must depend upon
the partial or impartial condition of his own mind, and not
upon the existence or nonexistence of a suspicion of bias
against him in the mind of some other person. How and
by whom is the fact of such mental condition to be deter-
mined in a case like this?

In *Schoeffler v. State,* 3 Wis. 823, it was held that "chal-
lenge to the favor involves a question of fact, to be deter-
mined by triers. It involves facts which do not necessarily
of themselves disqualify the juror, but may do so, accord-
ing to the state or condition of mind produced by them.
An opinion formed or a bias entertained upon merely hypo-
thetical grounds, such as, if what the juror has heard or
read be true, if he is personally inimical, etc.,— all such are
causes of challenge to the favor wherein the law pronounces
no absolute judgment, but leaves the question to be deter-
mined by triers, which question is, Does the juror stand
indifferent between the parties? . . . The truth of the
facts alleged as ground of challenge to the favor, as well
as their effect upon the mind of the juror, is to be deter-
mined by triers. In case triers are not demanded by the

Baker vs. The State.

parties, or ordered by the court, a challenge to the favor may be determined by the court." In this state it has long been the practice, sanctioned by an early statute, for the trial court to determine such qualification without the aid of triers. S. & B. Ann. Stats. sec. 2849. The statute also declares that "it shall be no cause of challenge to a juror, that he may have obtained information of the matters at issue through newspapers or public journals, if he shall have received no bias or prejudice thereby; or that he is an inhabitant of or liable to pay taxes in a county interested in the action." S. & B. Ann. Stats. sec. 2850. A similar statute under a like constitutional provision in Illinois has been held to be valid. *Spies v. People*, 122 Ill. 1; *Spies v. Illinois*, 123 U. S. 131; *Coughlin v. People*, 144 Ill. 140. Even in the case last cited it was, in effect, held that under such statute the competency of a juror was a judicial question, to be determined by the court from the evidence. In Pennsylvania it has been held that "where impressions are formed on rumor or newspaper statements which the juror feels conscious he can dismiss, or has no fixed belief or prejudice, and can say he can fairly try the prisoner on the evidence freed from the influence of the impressions, he is competent." *Staup v. Comm.* 74 Pa. St. 458; *Comm. v. Taylor*, 129 Pa. St. 534. In *Reynolds v. U. S.* 98 U. S. 156, WAITE, C. J., speaking for the whole court, said "that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the court upon that issue ought not to be set aside by a reviewing court unless the error is manifest. No less stringent rules should be applied by the reviewing

Baker vs. The State.

court in such a case than those which govern in the con-
sideration of motions for new trial because the verdict is
against the evidence.   It must be made clearly to appear
that, upon the evidence, the court ought to have found the
juror had formed such an opinion that he could not in law
be deemed impartial.   The case must be one in which it is
manifest the law left nothing to the conscience or discre-
tion of the court."   To the same effect:   *Spies v. Illinois*,
123 U. S. 179;  *People v. McGonegal*, 136 N. Y. 62;  *Phelps
v. People*, 72 N. Y. 334;  *State v. Cunningham*, 100 Mo. 382;
*State v. Elkins*, 101 Mo. 344;  *State v. Williamson*, 106 Mo.
162;  *State v. Gray*, 19 Nev. 212;  *Kumli v. Southern Pac.
Co.* 21 Oreg. 505.   For other cases to the same effect, see
the brief of the attorney general.

The opinion of Mr. Wentworth, based upon what he had
read in the newspapers and heard, as stated, was, as aptly
held in *Schoeffler v. State*, 3 Wis. 823, nothing more than " a
bias entertained upon merely hypothetical grounds; " that
is to say, it was entirely dependent upon the truthfulness
of what he had so read and heard.   There is no evidence
as to the effect of what he had so read and heard upon his
mind except his own sworn statements and his appearance
upon the stand, and the trial court was in a far better posi-
tion to weigh and determine the truthfulness of such evi-
dence than this court can be.   Within the rule sanctioned
by so many adjudications, we cannot hold, as a matter of
fact, that the finding of the trial court to the effect that
the juror was indifferent as between the parties was con-
trary to the evidence, nor, as a matter of law, that the
court abused its discretion in permitting him to become a
juryman.   Since most intelligent people are supposed to
read in the newspapers the account of the current events in
the county where they reside, it is impracticable, and would
defeat the ends of justice, to exclude from juries all persons
who happen to entertain an impression or opinion from

what they have so read.    The exception to allowing Wentworth to sit upon the jury is overruled.

6. The second count of the original information is given in full in the foregoing statement.    The first count in that information was substantially the same, except that "Chauncey H. Crosby, vice president of the United States Express Company, an unincorporated joint stock association organized and existing in the state of New York and having its principal place of business in the city of New York, in the state of New York," is alleged to have been the owner of the money stolen, instead of the Ashland Iron Mining Company, as stated in the second count.    On the first witness being called for the state, *Baker's* counsel requested the state to elect upon which count the prosecution would proceed.    Thereupon the district attorney elected to proceed upon the second count.    *Baker's* counsel then moved to quash that count, which motion was denied.    Thereupon *Baker's* counsel objected to any evidence under the second count, on the ground that it did not state facts sufficient to constitute a cause of action.    Thereupon the state, with the consent of the court so to do, withdrew such election, and proceeded upon the original information containing both counts.    *Baker's* counsel then objected to any evidence under such information, and moved to quash the same, for the reason that it alleges the ownership of the property in two different persons, without alleging that either had any special interest therein; which objection and motion were severally overruled.    The trial proceeded, and, after considerable testimony was taken, the state, with the consent of the court, amended the second count of the information so as to conform to the testimony taken, and so as to read as set forth in the foregoing statement, wherein it is alleged that the whole amount of the money so stolen was $40,680, of which $26,700 was the property of the Ashland Iron Mining Company, and $13,980 the property of

Baker vs. The State.

the Germania Iron Company; and the first count in the
original information was withdrawn. Numerous objections
and motions were made upon the part of *Baker* to such
amendments and changes of the information, but we are
constrained to hold that they were each and all properly
overruled. As the trial court properly held, there was but
one offense charged or proved, and that was the offense of
grand larceny. The amendments, so far as *Baker* was con-
cerned, all related to the amount of money stolen and the
ownership of the same. Our statute expressly declares
that: "Any court of record in which the trial of an indict-
ment or information is had, may forthwith allow amend-
ment in case of variance between the statement in the in-
dictment or information and the proof, in the following
cases: In the name or description of any person, place, or
premises, or of any thing, writing, or record, *or the owner-
ship of any property described in the indictment or informa-
tion,* and in all cases where the variance between the in-
dictment or information and the proof are not material to
the merits of the case." R. S. sec. 4703. The amount or
value of the money stolen only becomes important on a trial
for the offense, when it is necessary to fix the grade of the
offense. *Phelps v. People,* 72 N. Y. 334. Here, the differ-
ence in the amount named in the original information and
that named in the second count as amended is of no sig-
nificance as bearing upon the offense charged. It is, of
course, well that the person having the general ownership
of property stolen should be named in the information as
such owner, but it seems to be sufficient if the bailee or per-
son having a special property therein be named as owner.
*Ibid.* The right of the trial court to amend the informa-
tion in the manner indicated seems to be very clear under
the statute. *Miller v. State,* 25 Wis. 384. The question
whether the prosecution should have been required to elect

upon which count the state would rely, was certainly within the discretion of the trial court. *Martin v. State*, 79 Wis. 165. The plea of not guilty, entered by *Baker* prior to such amendment, continued to stand as the plea of not guilty to the second count as amended. *Rasmussen v. State*, 63 Wis. 1.

7. The direction to the officer in charge to keep the jury together was manifestly within the discretionary powers of the trial court. The same is true respecting the modification of such direction so as to allow jurymen to attend their respective places of business with permission of the court.

8. The money, etc., taken from *Baker* when he was arrested, and identified as such, was properly admitted in evidence against an objection that it was immaterial, irrelevant, and incompetent, and the court properly refused to strike it out. In answer to the suggestion of *Baker's* counsel to the effect that such money, etc., did not appear to be a part of the property or funds taken from the Iron Exchange Bank at the time of the robbery in question, the court said: "I think the evidence introduced upon the part of the state shows to us that it is a portion of the money taken at that time; consequently the motion is denied." The record simply shows "exception by defendant." This exception must be construed as applicable only to such denial of the motion, and not to the fact that the court expressed an opinion upon that branch of the evidence. If that expression of opinion was deemed objectionable, it was no more than fair to the court that counsel should have called specific attention to it, and then it might have been withdrawn or corrected at the time. *Gilchrist v. Brande*, 58 Wis. 184. Besides, the remark was by way of answer, and addressed to counsel, and not to the jury, and manifestly was intended as merely saying that the evidence on

the part of the state tended to prove that it was a part of the same money. *Ibid.* Otherwise the court would not have submitted the question to the jury.

9. Numerous exceptions are taken to the charge of the court, but the law of the case was pretty fully settled when it was here before, and the charge seems to be full and fair and in conformity with the opinion of this court in the case.

10. Counsel asks that *Baker* be discharged on *habeas corpus*, on the ground that he has served out his term of imprisonment. As indicated in the foregoing statement, he was sentenced March 11, 1892, for the term of five years. That is conceded to be the limit of imprisonment for such an offense. S. & B. Ann. Stats. sec. 4415. The contention is that, under ch. 238, Laws of 1880 (sec. 4928*a*, S. & B. Ann. Stats.), *Baker* is by good behavior entitled to a diminution of his sentence down to three years and nine months; and that, by counting the time actually served under his present sentence and also under his former sentence, he has served the time last mentioned. But that cannot be so, since the first judgment was reversed November 17, 1891. The time during which he was not under sentence cannot be counted on any theory. Assuming that the statute last cited is a valid enactment, which is, to say the least, a question of very grave doubt, and assuming that his conduct has been good up to the present time, yet by the very terms of the act he is still liable to forfeit and be deprived of all the time he has earned by good conduct. The theory of the act seems to be that it shall be administered by the warden with the consent of the directors. But in such a case this court only possesses appellate jurisdiction. We have no authority to take oral testimony as to credits or forfeitures. Only a little over two years of the sentence before us for review has expired. There is no law authorizing us to deduct from such sentence the time

Baker vs. The State.

he served under the former sentence. Even upon *habeas corpus*, we can only inquire into matters going to the jurisdiction. The statute expressly declares that: "No person shall be entitled to prosecute such writ who shall have been committed or detained by virtue of the final judgment or order of any competent tribunal of civil or criminal jurisdiction," etc. R. S. sec. 3408. The accused stands committed and is now detained by virtue of such a judgment. The court appears to have had jurisdiction of the person and subject matter, and does not appear to have exceeded its authority. This fully answers the application for a *habeas corpus*.

The case has been contested at every turn. Seemingly no objection nor exception has been omitted which zealous, persistent, and indefatigable counsel could devise. It is said that there are more than 1,000 exceptions in the record, and these are grouped under more than forty assignments of error, upon each of which counsel claim to rely. We have patiently listened to more than five hours' argument in behalf of the accused; and, in addition to this lengthy opinion, we have considered the other points, not mentioned, sufficiently to reach the conclusion that they are each and all too finical and inconsequential to require specific consideration in any further written opinion; and hence must severally be regarded as overruled.

*By the Court.*— The judgment of the circuit court is affirmed, and the application for a writ of *habeas corpus* is denied.

As to the effect of abduction, see cases collected in a note to *Kingen v. Kelly*, 15 L. R. A. 177.— REP.