STATE OF IOWA, Appellee, v. R. G. MULLEN, Appellant.

**False pretenses:** INDICTMENT: SUFFICIENCY. An indictment for false 1 pretense in procuring a check in payment for worthless corporation stock, which charges intent to defraud, sets out the pretenses, ownership of the property obtained, the amount of corporate indebtedness and alleges that the stock was worthless and not of the kind represented, is sufficient.

**Same:** AMENDMENT OF INDICTMENT. An indictment for false pre- 2 tense may be amended during the trial to correct the description of the instrument which it is alleged was falsely obtained.

**Same:** STATUTE: CONSTITUTIONALITY. The legislature may authorize 3 the amendment of indictments in mere matters of form, which will not prejudice the defendant. Under this rule the Act of the Thirty-third General Assembly authorizing an amendment to correct errors in the name of any person, or in the description of any person or thing, or in the allegations concerning the ownership of property that may be described in the indictment, is not unconstitutional.

**Same:** SUBMISSION OF ISSUES.   Where there is no evidence to support an issue its submission is erroneous.

**Same:** FALSE REPRESENTATIONS: EVIDENCE.   Upon a trial for false pretense in obtaining payment for worthless corporate stock, evidence of the making of a corporation mortgage more than a year prior to the alleged false representations was inadmissible to show the corporation's financial condition at a later date. Nor was the record of a suit against the corporation in which a sale of its property was ordered admissible for that purpose, to which neither defendant nor the prosecuting witness was a party, and where the sale was made some time after the offense charged was committed.

**Same:** INSTRUCTIONS.   On this prosecution for falsely obtaining payment for worthless corporate stock a refusal of the court to instruct, that unless the prosecuting witness was ignorant of the corporation's financial condition the accused was not guilty, and that he was not so ignorant if the accused gave or read to him a statement showing the corporation indebtedness, was prejudicial error.

*Appeal from Wayne District Court.*—HON. H. M. TOWNER, Judge.

TUESDAY, JUNE 6, 1911.

DEFENDANT was indicted, tried, and convicted of the crime of cheating by false pretenses, and from the judgment imposed appeals. *Reversed.*

*Tedford & Carter* and *Brown & Dolman,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,* Assistant Attorney-General, for the State.

DEEMER, J.—It is charged that by certain false and fraudulent representations and pretenses defendant secured from one A. G. Widmer a certain check for the sum of $5,000 in payment of fifty shares of stock in a corporation

known as the Southwest Smelting & Refining Company, a corporation organized under the laws of New Mexico. The alleged representations were, in effect, as charged: (1) That the stock was of the par value of $100 per share. (2) That the indebtedness of the corporation did not exceed the sum of $10,000. (3) That the shares of stock were "treasury stock" owned by the company, the proceeds of which was to go into the treasury of the company to be used by it in paying its debts and improving its smelter and other properties, that each and all of these allegations were false and untrue, and that defendant knew them to be false when he made them, and that such representations were made to defraud. The indictment, as originally returned, charged: That defendant, pursuant thereto, did then and there "obtain from the said A. G. Widmer then and there money and property of the value of $5,000, in a bank check, drawn on the Farmers' & Drovers' State Bank, of Seymour, Iowa, and signed by the said A. G. Widmer, and then and there delivered to the defendants. A more particular description of said check is to this grand jury unknown. That said defendants did then and there present said check to the said Farmers' & Drovers' State Bank for payment, and received from said bank then and there currency, commonly called money, to the value then and there, of $5,000. A more particular description of said money is to this grand jury unknown. That said defendants well knew that said stock was of no value, that said false representations were made then and there for the express purpose of obtaining said money and property of said A. G. Widmer."

This allegation was afterward amended when objection was made to the check offered in evidence so as to read as follows: "That the consideration given by A. G. Widmer, at Seymour, Iowa, on the 30th day of November, 1906, for the said fifty shares of stock was in the form of a check, in words and figures, as follows, to wit: 'Sey-

mour, Iowa, November 30, 1906.    The Numa Block Coal
Company.    No. 1,454.    Pay to the order of A. G. Wid-
mer, $5,000.00, five thousand and no/100 dollars.    The
Numa Block Coal Company, by A. G. Widmer, Treasurer.
To Farmers' & Drovers' State Bank, Seymour, Iowa.'
And which said check was then and there indorsed on the
back as follows: 'A. G. Widmer.'    And which said check
was then and there of the value of $5,000, and was then
and there the property of the said A. G. Widmer, and
which said check was then and there obtained of and from
the said A. G. Widmer, as stated and set out in the in-
dictment herein and amendment thereto, and that said
A. G. Widmer was induced to deliver the said check to
the said R. G. Mullen and R. M. Nichols by and on ac-
count of the false pretenses stated and set out in the in-
dictment herein."

This amendment was filed over defendant's objections,
with the permission of the trial court, and the ruling is
challenged.    As to this more hereafter.    After a long trial
defendant was convicted and sentenced to the state peni-
tentiary for the term of three years.    Something like eleven
assignments are relied upon, and many of these are sub-
divided into sections.    The argument, however, is directed
to five main propositions, and such of these as are deemed
important will receive our attention.

I.    The indictment was challenged by motion in
arrest of judgment, and it is argued with great assurance
that it charges no offense known to the law.    If it does
not do so, the county attorney who drew it

1. FALSE PRE-
TENSE: indict-
ment: suffi-
ciency.

did not understand the use of language, for
the indictment without the amendment cov-
ers nearly five closely printed pages of the
abstract, each page containing the usual number of words.
The exact claim, as we understand it, is that while
enough words were used, they are disconnected and never
arrive at any conclusion or charge.    It must be conceded

that the charge is not stated in simple and concise language, and that the reader has to carry in memory a good many statements before reaching any direct charge; but, taken as a whole, we find all the elements necessary to constitute an offense included in the language used. It charges an intent to defraud, sufficiently sets out the pretenses, with sufficient accuracy states the ownership of the property obtained by defendant, adequately and with sufficient fullness states the real amount of the indebtedness of the corporation, states that the stock received by Widmer was worthless, alleges that the stock purchased was represented to be treasury stock, and alleges that the stock received by Widmer was not treasury stock. Some other points made against the indictment will be considered later, as they do not go to the indictment as a whole. Every essential allegation seems to have been made, and the court did not err in overruling the motion in arrest.

II. When the check which Widmer gave for the stock was introduced in evidence, defendant objected, for the reason that it was not the property described in the indictment. The trial court intimated that it would sustain the objection because of variance between the allegations and the proof. Thereupon the county attorney filed the amendment heretofore set out. The Thirty-Third General Assembly passed an act known as chapter 227, paragraph 7 of which reads as follows: "The county attorney may, at any time before or during the trial of defendant upon indictment, amend the indictment so as to correct errors in the name of any person or in the description of any person or thing, or in the allegations concerning the ownership of property that may be described in the indictment; but such amendment shall not prejudice the substantial rights of the defendant, or charge him with a different crime or different degree of crime from that charged in the original

2. SAME: amendment of indictment.

indictment returned by the grand jury." The amendment comes within the terms of this statute.

But defendant contends that the statute is invalid and unconstitutional. Such statutes have uniformly been sustained in the face of like claims. See *Commonwealth v. Holley,* 3 Gray (Mass.) 458; *Miller v. State,* 68 Miss. 221 (8 South. 273); *Peebles v. State,* 55 Miss. 434; *State v. Schricker,* 29 Mo. 265; *Rough v. Commonwealth,* 78 Pa. 495; *People v. Johnson,* 104 N. Y. 213 (10 N. E. 690); *State v. Johnson,* 29 La. Ann. 717; *State v. Carter* (La.), 9 South. 128; *State v. Donovan,* 75 Vt. 308 (55 Atl. 611); *People v. McCullough,* 81 Mich. 25 (45 N. W. 515); *People v. Price,* 74 Mich. 37 (41 N. W. 853); *State v. Sullivan,* 35 La. Ann. 844; *People v. Brown,* 110 Mich. 168 (67 N. W. 1112); *People v. Mott,* 34 Mich. 80; *Baker v. State,* 88 Wis. 140 (59 N. W. 570); *Secor v. State,* 118 Wis. 621 (95 N. W. 942); *State v. Bright,* 105 La. 341 (29 South. 903); *People v. Hildebrand,* 71 Mich. 313 (38 N. W. 919); *State v. Oliver,* 20 Mont. 318 (50 Pac. 1018). Such statutes as the one now under consideration are becoming common to most jurisdictions, and the universal holding is that the Legislature may authorize and permit the amendment of indictments at any time in mere matters of form when defendant will not be prejudiced thereby. Of course, the Legislature, so long as it retains the grand jury, can not authorize the amendment of indictments in matters of substance, for, as amended, the indictment would not be the finding of the grand jury. The difficulty then is in determining whether the amendment is as to a matter of form or goes to the substance of the charge. As a general rule, the holdings have been that a mistake as to the name of a third person or as to the ownership of property may be amended. See cases hitherto cited and also the following: *State v. Hanks,* 39 La. Ann. 234 (1 South. 458); *State v. Casavant,* 64

*3.* SAME: statute: constitutionality.

Vt. 405 (23 Atl. 636); *Baker v. State,* 88 Wis. 140 (59 N. W. 570); *Myers v. Com.,* 79 Pa. 308; *Rosenberger v. Com.,* 118 Pa. 77 (11 Atl. 782).

III. One of the alleged false representations was that the stock was worth $100 per share, and that Widmer relied upon the representation as to value, whereas, in truth, the stock was valueless. We have gone through the record with care, and fail to find any testimony showing or tending to show that defendant made any representations as to the value of the shares of stock, and there is also an entire absence of testimony showing that Widmer relied upon any such statements. The trial court erred in submitting this issue to the jury.

4. SAME: submission of issues.

IV. In order to prove the indebtedness of the corporation at the time when the representations are said to have been made, the state was permitted to introduce in evidence, over defendant's objections, a certified copy of a mortgage purporting to have been executed by the corporation to secure the payment of one hundred and fifty first-mortgage bonds of $1,000 each, covering the entire property of the company. This mortgage was made in October of the year 1905, and the representations as to indebtedness are said to have been made in November of the year 1906. This certified copy of the mortgage was no proof of a subsequent indebtedness to the amount thereof, and it should not have been admitted in evidence. *State v. Clark,* 141 Iowa, 297.

5. SAME: false representations: evidence.

Supplementary to this, and no doubt for the purpose of showing the value of the stock, the state was permitted to introduce in evidence, over defendant's objections, the records and proceedings of a case in New Mexico of Collens Bond & Investment Company against the corporation, showing a judgment by agreement against the company for the full amount claimed and a sale of the property of

the corporation. The order confirming the sale was made in ·January of the year 1909. To this action neither defendant nor the prosecuting witness was a party, and we think the trial court was in error in permitting these records to be introduced in evidence. They neither showed nor tended to show indebtedness at the time in question, nor did they throw any light upon the question of the value of the stock at the time the same was sold. The sale of the property happening more than two years after the statements are said to have been made as to indebtedness and value of the stock was not competent to establish either value or indebtedness. Presumptions do not ordinarily relate backward.· When they do, the period of time is short and the sequence apparent. The records should not have been received. *Ellis v. State,* 138 Wis. 513 (119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022); *McNicol v. Collins,* 30 Wash. 318 (70 Pac. 753); *Gere v. Insurance Co.,* 67 Iowa, 272.

The ·case was complicated, and the only issue, as we think, which the testimony tended to support, was defendant's misrepresentation as to the amount of the indebtedness of the corporation at the time the stock was sold to Widmer. Of the other representations there was little or no testimony, and yet a great amount of evidence was taken which it is claimed had some bearing upon the case. The defendant asked the court to give the following instruction: "The jury is instructed that, unless it should believe from the evidence beyond a reasonable doubt that the said A. G. Widmer was at the time he purchased and paid for the stock as charged in the indictment ignorant of the real condition of the Southwest Smelting & Refining Company with respect to its indebtedness, it can not find the defendant guilty of the charge that he falsely represented the amount of said indebtedness; and if at and prior to said time the defendant had given to said A. G. Widmer

6. SAME: instructions.

a statement showing the true amount of such indebtedness, or had read such a statement to him, or in his presence and hearing, then he was not so ignorant." This, or something like it, should have been given, and, as the matter was not clearly brought to the attention of the jury, it is more than likely that prejudice resulted to defendant from the omission. In a colloquy between the court and the jury after the case was submitted, it appeared that this was one of the pivotal points in the case, and no specific instruction was given with reference thereto unless it be found in what the court said orally to the jury.

This, of course, did not cure the omission and was doubtless error in itself, because not given in writing.

For the errors pointed out, the judgment must be, and it is, *reversed.*